23-30261, Smith v. DG Louisiana. Mr. Aguilar. Good morning to the court. Chad Aguilar on behalf of Stephanie Smith, Dwayne Smith, appearing before this court as the appellants in this matter. And I'm going to kind of get right to what the issues were in this case and the two issues that were cited as error coming out of the trial that was conducted back in July of 2022. The first issue had to do with the issue of constructive notice and what we urged was a failure of the trial court to give an instruction relevant to the most important issue in our case, which was the fact that the defendant, through an agent, led the plaintiffs through a hazardous condition or an unreasonable risk of harm. Counsel, let me ask you. Yes, Your Honor. Was there anything in the instructions that the judge gave the jury that was legally incorrect? Or did he just not give the instruction that you submitted or that you preferred? And that came up in that manner, Your Honor. And what I would say to that is that the judge's instructions, just as I indicated to the Honorable Judge de Gravel at trial, were correct as it applied the constructive notice element to a case where an agent does not walk through the hazard with the plaintiffs. As in the Tatia case, which was cited by us in brief, just real quickly, this Honorable Court held, and I'm going to cite one sentence, that jury instructions must vary to fit the particular facts of each case. But doesn't the statute envision the very circumstance that happened here? Doesn't the statute governing premises liability have a specific provision regarding constructive notice? I cite Crawford v. Ryans for the proposition that in defining a temporal element, when, in that case if I may, Ryans was held negligent by the trial court for its employees' failed inspection immediately prior to the fall. So from this view of the case, the precise time that the meet, and I'm talking Ryans, the case that we cited, fell on the floor is not relevant because the spill was shown to have been in existence when the Ryans employee escorted Crawford through the area of the spill. Is the temporal element something that we allow the jury to factor in, whether it's a short period of time or a long enough period of time? Isn't that something the jury can decide whether, gee, the merchant acted insufficiently or inadequately because it was X number of minutes? I mean, there's no clock. The statute doesn't envision a clock that, boom, there's a product on the floor, and now let's see how long it takes for someone to pick it up. And it does, and I hate not to interrupt the court. And I don't mean to interrupt you. I just want to clarify. You're exactly right, Your Honor. The temporal element is not defined in minutes or in hours. But I would refer this court because this was such a unique case. And I'm going to tell you, it was such a unique case that even Judge DeGravelle at the beginning, because I knew this was coming, and I said under Rule 51, I want to bring this issue right up front. I want to tackle it before we get started. Day one, I approached the court. I said, Your Honor, I've looked at your jury instructions. They're generally correct. But it does not help the jury understand the facts of this case if they don't understand that a factor that can be utilized in determining the positive evidence for purposes of the temporal element is if you find. I don't want to infer nothing to the judge. I don't want to tell them what to infer. But if you find that Dollar General walked these folks through that hazard, you can take that into consideration in determining whether the temporal element is met. But if you don't tell them that, and I said it on day one, they're going to miss it. Because they're going to be thinking temporal element, but this case doesn't involve white, where the merchant is on aisle one and the fall happens on aisle three. What did your client actually slip on? with dog food in that aisle. The defendant, merchant, employee, walked, observed the dog food. No, no, no. I understand. I'm sorry. I'm just trying to know if that was the dog food. And that's the latest in the area. And somebody said, OK, watch out for that. I'm just trying to make sure I'm clear on what substance was alleged that your client actually slipped on. A combat box about three by five feet, colored, not clear liquid. OK, Your Honor. And if I may, I want to talk about how important the distinguishing element was to Judge Drew in the trial court of the Second Circuit matter in Crawford. Because what I don't want the court to think is that I'm somehow trying to rewrite 92800.6 and the temporal element. But if we leave these eight folks with the notion that they have to find time, even if they find that you walk through the constricted area with the plaintiffs and you fail to inspect what was there at that time, I think that specific instruction was important to this case. Because in Crawford, for example, Judge Drew wrote, what distinguishes this situation from other slip and fall cases is the fact that the manager led the plaintiffs into harm's way by attempting to perform his job courteously and efficiently. He inadvertently led these folks through a constricted area where the greasy beef was located. And so in this scenario, we're only dealing with a very narrow, narrow factual situation per 92800.6. If this was a situation that did not involve that specific fact, then I believe we would not, I wouldn't be making this particular argument, even in white. If you look, I'm sorry. Let me ask you this. Assuming that we agree that an instruction that may have been more tailor-made or more informative to the jury based on the facts of this case were given, we don't really know from the jury in derogatory form. There's just a question about liability. So the next step, and it's covered in the briefing, is seeing something in clear view. Now you mentioned, I'm assuming you misspoke when you said three feet by five feet. Three inches by five inches, is that a box? I can tell by the way you held your hands that you meant three inches by five inches. There's a box of roach poison amidst dog food that had spilled. Is the dog food in cans or is this like morsels? Pellets spilled throughout the aisle. Out of an open bag somewhere on the shelf or something. Right, and if you believe Dollar General's version of what happened, we're walking through, I'm talking Brandon Shipley, the guider, the escorter, that we're going through the aisle, dodging the dog food. Now I ask him, well hold up, didn't the dog food take your attention away from slipping on the box? He says, no, it wasn't the dog food that took my attention away, it was our conversation that we were having as we went through the aisle. And I think your honor is right on point when you say, let's shift over the issue too, just briefly if I may, on the absence of evidence, your honor, to support the jury verdict. I can tell you that there wasn't a lot of argument at that trial about whether dog food in a box constituted a hazard or an unreasonable risk of harm. That wasn't talked about much, but I can tell you Brandon Shipley and Dollar General agreed that that was the case and our experts said, yep, that constitutes a hazard. I think common sense kind of tells us that's a hazardous foreseeable situation. The next question is whether or not they had actual notice. And Judge DeGravelle defined the actual notice requirement as eliminating the need for a temporal element in this scenario, unlike constructive notice. But in this case, there was no question that Brandon Shipley saw the dog food before the fall on the box because they walked up the aisle, saw the dog food, then she slipped on the box. But he told them, be careful with the dog food on the ground, right? He did, but he also said, your honor, and I want you to think. Are you saying that he also had to say, oh, by the way, there's also a roach poison box there. Not necessarily, but what the experts said was that when you see that hazard, you restrict access through that aisle. You stop it. That's reasonable care. Verbal warning is not enough. And Brandon himself said that if he had to do it over again, and to me that's the essence of reasonable care, would you do it again? He said, no. I would have stopped access through that aisle, and I would not have done so, and I quote, because going through the dog food was unsafe. But you agree that reasonable care is really a function of a jury evaluation, right? It is. Whether he acted reasonable, whether your client acted reasonable, that's really grist for the jury mill. I cannot dispute that. That's a jury determination. And that he did testify. You asked him that? I asked him that. And he said to the jury, if I had to do it over. He said, if I had to, I asked him, would you do it over again? He said, no, I would not. I would have stopped traffic through that area and gone around the other way because to go through the dog food was unsafe, close quote. So despite all of that, the jury found against your client. And I think the reason why we're here today, Your Honor, has to do with, and I can't determine which specific one of those issues, but on the issue of constructive notice, this jury was left with the determination or the question of how long that box would have remained on the ground, Your Honor, in a situation where they were not informed of the legal significance per Crawford and state law of the patron or the Dollar General employee walking them or escorting them through that hazard. We believe that had they understood that point, that that would have affected, could have affected the outcome of the case, and it misguided them as it related to the temporal element. What's the legal error? Judge Engelhardt asked you, what's the legal error in the jury charge that was given? Assuming the panel agrees with you, it could have been more specific, more carefully tailored, but generally we say, you know, no abuse of discretion if he's within the zone. So if the legal error, if we don't determine there was a legal error per se because of the charge, then what's your linchpin of legal error to infect the jury jury? That when the court defined constructive notice and he indicated to them that it required the temporal element, which is generally correct, generally correct, it totally missed the factual tailoring and what this particular case stood for and what these particular facts stand for. They went back to deliberate, Your Honor, and they're looking for a temporal element when, according to Crawford, when you walk them through it, that impacts that temporal element. We had to have something, Your Honor, told to that jury that encompassed the theory of liability pursuant to Crawford's view. To be clear, I'm looking at the instruction. You don't think this is sufficient? The presence of an employee of the merchant in the vicinity in which the condition exists, while a factor to be considered, does not alone constitute constructive notice. That's not enough? That's correct because that's the amendment that happened after this case wherein the sufficiency or saying just because they're there does not constitute negligence. That is a correct statement of the law. What we were saying, Your Honor. That is a correct statement of the law, is it not? That is a correct statement, but it does not fit the theory that we presented to the jury as it related to the leading aspect. So to hold for you, we would have to find reversible error in the jury charge given or reversible error in the jury charge not given? I think that the cases that have been cited by this court, Russell and Tatia, encompass not only an erroneous instruction. No, no, I'm just asking straight up. Failure. I want to know what people want. Failure. What I'm saying, in order to, after a full jury trial, in order to rule in your favor, would we have to hold that the jury charge that was given was legally incorrect, or is it we'd have to hold that the court erred legally by not giving some other instruction to the jury? The latter, Your Honor. Okay. And what's your best case? I'm sorry? What's the strongest case you have for us reversing a trial court in a full jury trial in a circumstance where not the jury charge at issue, but a different jury charge is what you're basing relief on? Or then an additional charge based on the facts of this particular case. And that's what you said Crawford and the other cases? That's exactly what Crawford said, Your Honor. Okay. And Tatia. All right. Thank you, sir. All right. Mr. Davies. May it please the court. Trevor Davies for DG Louisiana LLC. I'll make two arguments in support of my client's request that this honorable court affirm the jury verdict in this case. First, the trial court's decision not to include the jury instruction based on Crawford was proper and certainly not abuse of discretion. Second, even if the trial court erred by not including that jury instruction, plaintiff had to establish three elements to meet the merchant liability statute, and the Crawford case only deals with one. So the jury could have concluded that they didn't satisfy the burden on the other two elements. So plaintiff claims that trial court abused its discretion by not including a proposed jury instruction. The jury instruction, just for your reference, that they proposed was the temporal element can be inferred when plaintiff can establish that the hazard was in existence when the merchant escorted the plaintiff through the area where the hazard was located. All right. That is language taken from a Louisiana Second Circuit opinion from 25 years ago. A review of every case that's ever cited Crawford in the last 25 years, not a single case has cited that exact language. What they've cited Crawford for is the proposition that the jury or the finder of fact, if it's a bench trial, could make a determination based on direct or circumstantial evidence as to whether or not they meet their burden of proof on constructive notice. The Crawford case specifically has been cited for the following. The requirement for the positive showing under White v. Walmart, which is controlling law in Louisiana Supreme Court, that that aspect of constructive notice can be satisfied is either direct or circumstantial evidence. And this is what the trial court instructed in our case. First, the trial court defined circumstantial evidence as proof of a chain of circumstances from which you can infer or conclude that a fact exists, even though it has not been proved directly. So the jury heard that. Next, the trial court instructed, plaintiff may prove constructive notice, as I've explained that term to you, by direct or circumstantial evidence. The trial court instructed that. So essentially, the trial court actually used what Crawford has been used for by other cases and told the jury that, even though it rejected the concept of giving a specifically tailored Crawford instruction proposed by a plaintiff. I noticed that this Crawford case that we've been referring to was actually cited by this honorable court about 15 years ago. It was the Kuti v. Walmart Stores case, 2244 F.3D 766 from, I guess it was 2000, that would be 24 years ago. In Kuti, the plaintiff slipped and fell on at least one grape at a Walmart store. At trial, the evidence was introduced to support the constructive notice claim, and that involved grapes on the floor that appeared to be brownish and rotten. And then another aspect of it was that a manager observed skid marks in the area as they approached, and plaintiff argued, well, those skid marks were somebody else's footprint, so it must have been there for some period of time prior to the incident. So this court cited Crawford not to say, oh, well, that is proof of constructive notice. This court cited Crawford for this proposition. Plaintiff's burden to put forth positive evidence to show constructive notice does not supersede the general rule of evidence allowing for circumstantial evidence to prove a material fact. So we know that circumstantial evidence can be used. That aspect is not in dispute. Defendant did not object when the judge provided those instructions or suggested those instructions to the jury. But I want to use the Kuti case as an example of what the plaintiff is trying to do here, and that is this. They wanted the trial court, using those same facts as Kuti, if you plot it in our case, they would want the trial court to say the temporal element for constructive notice can be inferred if you find that the grapes were rotten. They also want the court to say, give a proper instruction to say, the temporal element can be inferred if you find the skid marks were created by other customers. Those are not proper jury instructions because it gives the judge's interpretation of the circumstantial evidence rather than allowing the jury to take the circumstantial evidence, apply the law that's been provided, and make their own determination. Meaning if Judge DeGravel had given that instruction, you'd be up here arguing for an abuse of discretion. Probably, because the judge is imputing his own factual determination and then applying the law to that factual determination. The reality is the jury could look at that circumstantial evidence and make a totally different conclusion than what the plaintiff is trying to suggest, that if you walk somebody through an area, then that in and of itself is enough to establish a temporal element under White v. Walmart. And that's just not the case. But even if you were to say that the judge abused discretion by not providing that instruction, there's no basis to overturn the jury's verdict. To prevail under the slip and fall statute, you've got to establish that somebody fell over a condition that presented an unreasonable risk of harm, that that condition had been there for some period of time, such to establish constructive notice, and third, to establish that the merchant failed to exercise reasonable care. Now, in this verdict form, there was a single interrogatory. It wasn't broken down in all three elements. And so the single interrogatory was, do you find that the plaintiff proved by preponderance of the evidence that Dollar General is liable under the merchant liability statute? It wasn't broken down as unreasonable risk of harm, notice, and failure to exercise reasonable care. The jury answered that question with a simple no. The jury could have concluded, based on all the evidence, that the answer was no to that question because the box, the three-by-four or three-by-five-inch box, did not present an unreasonable risk of harm because both plaintiffs testified that they were actually watching closely the ground as they were walking down the aisle. So the jury could have said, well, there could have been nails, there could have been a puddle, there could have been anything on there, but that didn't present an unreasonable risk of harm to the plaintiffs because they testified that prior to the incident they were actually looking at the ground. Next, the jury could have concluded that the answer was no, that they didn't meet their burden of proof because Dollar General exercised reasonable care, and therefore plaintiff didn't meet their burden of proving failure to exercise reasonable care. And they could have made that determination because Brandon Shipley, the Dollar General employee, prior to this accident said, hey, watch out for the dog food. He gave them notice of the only object on the floor that he had notice of, so he satisfied his duty to exercise reasonable care. Or the jury could have simply just not believed anything that the plaintiffs said in this case. For example, Mr. Smith testified that Brandon Shipley, the Dollar General employee, told him that prior to the incident Brandon Shipley was cleaning up the dog food spill, but that a manager told him to leave that spill on the ground and go do something else. Now when Brandon Shipley testified and the manager testified, they said no, that never happened. The jury could have made a credibility determination and believed Brandon Shipley and the manager over this plaintiff and said that this is just not credible evidence. The jury also could have concluded that nothing the plaintiff said was credible because the plaintiff herself admitted that she lied to me in a deposition about memory loss issues that she claimed to be related to the incident at Dollar General when in fact we've showed her evidence that she had those issues dating back to at least 2015. And on the stand she said she lied about it to me in her deposition. The jury could have simply concluded none of this is true because we don't believe anything that they're saying. There were several other instances where both plaintiffs were impeached during the course of the trial and any one of those instances could have led the jury to disbelieve everything that they were saying. And because the jury verdict form was not specific enough to narrow it down to the constructive notice issue, we don't know. We don't know whether it was element one or element three under 920.6 that the jury decided to dismiss the case on. This is not an appeal about the trial court giving an incorrect instruction as Your Honor pointed out. Rather plaintiff is claiming that the judge should have added yet another charge to the 35 record pages of jury charges that this jury unfortunately had to sit through which as you may know as a trial attorney is the slowest 30 minutes of your life. Thirty-five pages? Yes. The trial court did not commit error when he decided not to include the instruction and therefore we ask that this court affirm. Thank you. Okay, thank you sir. Mr. McElroy, do you have a vote? Yes, Your Honor. Just briefly in response to the point they may not have believed everything that the plaintiff has said but on the issue of liability and on the issue of what happened in that aisle, I can tell you Brandon Shipley, Dwayne Smith, and Stephanie Smith basically testified to the same essential facts. Those essential facts are the same facts that stem from facts emanating from Ryans v. Crawford. And I agree with the judge's analysis of the first issue that was cited in the Crawford case which expounded on white by indicating that positive evidence can be found by utilizing circumstantial or direct evidence. But I urge the court just to take a look back at Crawford on the next issue where it talks about what Ryans argued. Argued that white requires proof of a time period, the temporal element of the existence of a spill and that the plaintiff did not establish when the taco meat first fell on the floor. Court went on to say, in contrast in this case, there was no delay. No delay specifically addressing the time period because the merchant's last opportunity to inspect the premises coincided with the time of the spill's existence on the floor and the fall itself. Instead of negligence for the delay or lack of inspection, Ryans was held negligent by the trial court for its employees' failed inspection immediately prior to the fall. From this view of the case, the precise time that the meat fell on the floor is irrelevant because the spill was shown to have been in existence when Ryans' employee escorted Crawford through the area of the spill. So when we look at the scenario of the grapes and the turning of the color of the grapes as circumstantial evidence as to time, I understand that. That's looking at the first prong of Crawford. But I think what Crawford stands for in this probably such a unique factual situation that you're not going to see it where you fail to inspect something contemporaneous at the same time of the injury itself. So I just believe that the Crawford case and the failure to give instruction that would have aided the jury in understanding how that impacted the temporal element is exactly what should have been done. And in fact, exactly what Judge DeGrabel indicated at the beginning. And I quote, may I step back and just real quick. And I quote, well, it's a unique case, very unique case. Well, it's that a slip, you know, how he shown negligence. I'm not even sure if the merchant liability statute applies here. And I quote, but I am convinced that this set of facts does away with the need to show the temporal element. That's this court's belief. That's my preliminary belief. If you're leading, if you're leading an employee and he's leading the person into danger, then how long it's been there is irrelevant. That was the court's belief. And I think at that point was correct. Not in the sense that the Crawford and all of the other cases that define circumstantial and direct evidence and how that can be used to establish the temporal element. Not that that's not right. But what I'm saying is when you have such a unique case here where a fall occurs at the same time as the negligent act and you can't prove the time period because it's happening right then. And what the court's saying is, or what Crawford said, is that the time period is irrelevant. I think that an instruction or the failure, Your Honor, to give an instruction in that regard prevented a just verdict. And I thank you for your attention. Thank you, Mr. Aguilar.